UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEN JASON PATAJO,<br><br>      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. C14-5433-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Ben Jason Patajo seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by discounting the medical opinions of Nichole Seymanski, Psy.D., and John Gonsoulin, M.D.  Dkt. 11.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings.

**BACKGROUND**

Mr. Patajo is currently 34 years old, received his GED, and has worked as a telephone solicitor, sales representative, and laborer.  Tr. 33, 49.  On August 31, 2010, he applied for benefits, alleging disability as of March 3, 2007.  Tr. 9.  His applications were denied initially and on reconsideration.  *Id*.  The ALJ conducted a hearing on December 5, 2012, finding Mr.

REPORT AND RECOMMENDATION - 1

Patajo not disabled. Tr. 22. As the Appeals Council denied Mr. Patajo's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found Mr. Patajo had not engaged in substantial gainful activity since the amended alleged onset date; he had severe impairments of Crohn's disease, major depressive disorder, generalized anxiety disorder, and borderline personality disorder; and these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 9-12. The ALJ found Mr. Patajo had the residual functional capacity to perform light work but that he should have ready access to bathroom facilities, he could perform routine tasks and instructions, and he should not have public contact but could have occasional contact with coworkers without teamwork. Tr. 13-14. The ALJ found Mr. Patajo was unable to perform his past work, but could perform jobs that exist in significant numbers in the national economy. Tr. 20-22. The ALJ therefore concluded that Mr. Patajo was not disabled. Tr. 22.

## DISCUSSION

**A.    The ALJ Erred in Evaluating Dr. Nichole Seymanski's Opinion**

The parties agree that Dr. Seymanski's opinions may only be rejected if the ALJ provides specific and legitimate reasons based on substantial evidence in the record. *See* Dkt. 11 at 2, Dkt. 12 at 5; *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ gave little weight to Dr. Seymanski's opinion that Mr. Patajo "would likely have difficulty in attending and performing necessary work tasks," finding that the opinion was based on a self-report assessment and that the doctor relied heavily on Mr. Patajo's unreliable subjective complaints. *See* Tr. 17-20. The ALJ failed to provide a legitimate basis for concluding Dr.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Seymanski adopted Mr. Patajo's statements in lieu of considering her own clinical findings.

As Mr. Patajo correctly notes, Dr. Seymanski based her opinion on the results of a Millon Clinical Multiaxial Inventory-III ("MCMI-III") assessment. Dkt. 11 at 3-4 (*citing* Tr. 685-86). The Commissioner argues Dr. Seymanski's MCMI-III assessment does not invalidate the ALJ's decision because that test does not provide "objective psychological testing." Dkt. 12 at 7. The Commissioner's argument ignores the Social Security Administration's ("Administration") treatment of the assessment generally. For example, the Administration has routinely relied upon unfavorable MCMI assessment results as a means to discredit claimants. *See, e.g., Hobbs v. Astrue*, CV-09-351-CI, 2011 WL 940773 *6 (E.D. Wash. 2011) (MCMI-III test results suggesting malingering were "clear indicators . . . that Plaintiff's responses were unreliable"); *see also Mohring v. Colvin*, CV-13-2048, 2014 WL 2877757 *8 (N.D. Iowa 2014) (upholding ALJ decision which found MCMI-III results "demonstrated situation stressors significantly contributed to [claimant's] overall mental state"). The Administration's past treatment of MCMI assessments underscores a belief that the test has at least some objective value.

Though the Ninth Circuit has not decided the issue, the Western District of Washington and other courts have recognized MCMI assessments as valid psychological tests. *See e.g.*, *Pellinen v. Astrue*, CV-11-5576-RBL-JRC, 2012 WL 3564232 (W.D. Wash. 2012) *adopted by*, CV-11-5576-RBL, 2012 WL 3564228 (W.D. Wash. 2012) (reversing ALJ's determination that doctor's opinions were unsupported by "objective clinical findings," because the opinions "were supported by plaintiff's results on the Millon, which indicated that plaintiff suffered from 'an Avoidant Personality with co-occurring anxiety'"); *Reeder v. Colvin*, 13-1201-SAC, 2014 WL 4538060 *4 (D. Kan. 2014) (reversing ALJ where ALJ accorded limited weight to medical opinion based on MCMI-III, a test that "provides a measure of 24 personality disorders and

clinical syndromes[] and assists clinicians in psychiatric diagnosis," in favor of medical opinion based wholly on consultative examination); *Farmer v. Astrue*, 832 F.Supp.2d 1293, 1299 (D. Kan. 2011) (reversing ALJ because doctor relied on MCMI-III test results, despite ALJ's assertion that doctor's opinion "relied quite heavily on the claimant's subjective report of symptoms and limitations"); *cf. McNertney v. Astrue*, CV-10-3149-NKL, 2011 WL 2416618 (W.D. Mo. 2011) (reversing ALJ, stating "[a] validity scale is inherent in MCMI-III testing.").

In addition, the ALJ's contention that Dr. Seymanski relied on Mr. Patajo's self-reports also finds no basis in the record. The results of Mr. Patajo's MCMI-III test indicate that Mr. Patajo's "profile" "comes from the *Interpretive Report* from the MCMI-III results." Tr. 685 (emphasis added). There is no evidence to suggest that the doctor did nothing more than simply record or parrot back Mr. Patajo's self-reports; rather, the evaluation suggests that Mr. Patajo's raw responses were subjected to some sort of an analysis. Accordingly, substantial evidence does not support the ALJ's finding that Dr. Seymanski relied on Mr. Patajo's self-reports to the exclusion of objective findings.[3]

The ALJ's error is not harmless because there is at least a potential likelihood that Dr. Seymanski's opinion was not factored into Mr. Patajo's RFC. During the administrative hearing, the ALJ posed a hypothetical to the Vocational Expert ("VE") mirroring the RFC in the ALJ's decision. Tr. 49. Upon questioning by Mr. Patajo's representative at the hearing, the VE clarified that employers for the jobs she posited Mr. Patajo could perform would not permit more than one absence per month. Tr. 51. The ALJ also posed a second hypothetical to the VE in

---

[3] Having found no basis to assume Dr. Seymanski relied only on Mr. Patajo's self-reports, the Court also finds unpersuasive the Commissioner's argument that the ALJ properly rejected the doctor's opinions as based "'to a large extent' on [the] claimant's self reports that have been properly discounted as incredible." Dkt. 12 at 6 (*citing Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

which the claimant would be "unable to perform activities within a schedule." Tr. 50. In response to this hypothetical, the VE testified that with such limitations, the claimant would not be competitive for employment. *Id.* As Dr. Seymanski opined Mr. Patajo "would likely have difficulty in attending and performing necessary work tasks," Tr. 686, the VE's testimony raises serious doubts as to whether the ALJ's decision remains legally valid despite his error. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error."). Thus, on remand, the ALJ shall reevaluate Dr. Seymanski's opinion, and as necessary, reevaluate Mr. Patajo's RFC.

**B.     The ALJ Erred in Evaluating Dr. John Gonsoulin's Opinion**

Mr. Patajo also challenges the ALJ's rejection of the opinion of consultative examiner John Gonsoulin, M.D. Dr. Gonsoulin opined Mr. Patajo may have difficulty performing simple and repetitive tasks, performing work activities on a consistent basis, accepting instructions from supervisors, and interacting with co-workers and the public. Tr. 620. The ALJ also opined Mr. Patajo would likely require extra supervision. *Id*. The ALJ assigned Dr. Gonsoulin's opinion "little weight" because the doctor's evaluation "did not have the type of significant clinical abnormalities to substantiate [it]." Tr. 19. The Commissioner attempts to find a distinction in the fact that the ALJ rejected the opinion based on the "type" of clinical abnormalities the doctor identified, rather than on a "lack" of clinical abnormalities. Dkt. 12 at 9. The distinction is disingenuous: the only reasonable interpretation of the ALJ's statement is that the doctor's clinical findings did not support his opinion. With this in mind, and for the reasons discussed below, the Court finds that substantial evidence does not support this basis for rejecting Dr. Gonsoulin's opinion.

The ALJ also found that Dr. Gonsoulin relied heavily on Mr. Patajo's subjective complaints. Tr. 19.  In drawing this conclusion, the ALJ ignored clear indications in the doctor's report that the doctor relied on objective findings in addition to Mr. Patajo's self reports:  the evaluation notes the doctor reviewed "DDDS Reports" and a Psychological Evaluation from DSHS dated February 18, 2010, and indicates the doctor conducted a mental status examination. Tr. 616, 618.  Accordingly, substantial evidence does not support the ALJ's finding that Dr. Gonsoulin improperly relied on Mr. Patajo's self-reports.  *Cf. Tommasetti*, 533 F.3d at 1041 (ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible").

Finally, the ALJ also rejected the doctor's opinion because he found the "moderate GAF score" was inconsistent with the doctor's opined limitations.  Tr. 19.  Dr. Gonsoulin assigned Mr. Patajo a GAF score of 53, which is indicative of someone with moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 1994).  The ALJ's rejection of Dr. Gonsoulin's opinion on the basis of Mr. Patajo's GAF score was insufficient, because Mr. Patajo's GAF score was objectively *consistent* with a finding of someone with Mr. Patajo's symptoms and difficulties relating to social and occupational functioning.  The ALJ erred in failing to explain why his own interpretation of Mr. Patajo's GAF scores, as a basis for rejecting Dr. Gonsoulin's opinion, was correct.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct.")

As with Dr. Seymanski, the ALJ's error is not harmless because portions of Dr.

REPORT AND RECOMMENDATION - 6

Gonsoulin's opinion regarding work supervision were not factored into Mr. Patajo's RFC. On remand, the ALJ shall also reevaluate the opinion of Dr. Gonsoulin and Mr. Patajo's RFC as necessary.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should reevaluate the medical opinions of Dr. Seymanski and Dr. Gonsoulin, and, as necessary, reevaluate Mr. Patajo's RFC and steps four and five of the five-step evaluation process.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **October 31, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **November 3, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 17th day of October, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7